McAFEE
*vs*
FERGUSON, &c.

---

## McAfee *vs* Ferguson, &c.
### ERROR TO THE MERCER CIRCUIT.
#### *Fraud, Marital rights.*

JUDGE SIMPSON delivered the opinion of the Court.

In the year 1845, John McAfee was married in the State of Missouri, to Ann Broaddus, then a widow, hav-

CHANCERY.

*Case* 109.

| 9bm 475 |
| 112 766 |

July 5.

Case stated.

ing one child a daughter, named Sarah, by her former husband. When the treaty of marriage between them commenced, she was the owner of four slaves, a woman and three children, and other estate not exceeding eight hundred and fifty dollars.

During the pendency of the negotiation and in contemplation of the marriage likely to ensue, she executed a deed of trust to her brother John Ferguson, on the four slaves, and a note which she held on Yeldell for two hundred dollars. According to the terms of the deed, she was to have the use of the slaves until her daughter should marry, at which time, two of them were to belong to the latter, and to be delivered to her; the others, however, were to be held by the trustee for the use of the donor during her life, and then to go to the daughter. The debt on Yeldell was to remain at interest, and be made productive, until the marriage of the daughter should take place, when it was, with its accumulations to be paid over to her. The mother for the use of the two slaves which the daughter was to have on her marriage, was to educate and maintain the latter, until her marriage should occur. The deed was recorded in Boone County Missouri, where Ann Broaddus then resided, and where the slaves were, and shortly afterwards her and McAfee were married; he remaining ignorant until after his marriage that such a deed had been executed,

Sarah Broaddus the daughter, and the slaves being in Kentucky, this suit in Chancery was instituted by McAfee to set aside and vacate the deed of trust made by his wife before her marriage, as being a fraud upon his marital rights.

He admits that his wife and himself before this marriage had a conversatian in relation to her daughter Sarah, in which it was agreed, that she should live with them and be educated and supported free of charge until she married, at which time she was to give her a negro girl, and such other property as is usually given to daughters on their marriage to assist them to commence house keeping. He denies all knowledg of the existence of the deed of trust, until after he was married,

and his ignorance on the subject is fully evinced in our opinion by all the facts and circumstances that have been proved in the cause.

Whether the doctrine that a conveyance, although made by a woman in contemplation of a second marriage, and pending an actual treaty, if made for the support of her children by a prior marriage, is good and valid, upon the ground that the reasonableness of the object legalizes the transaction; and that such a conveyance will be sustained in equity against the caims of the second hnsband, notwithstanding his want of privity and consent, as decided in the case of *Hunt* vs *Matthews* (1. *Vern.* 408.) be correct or not, which it is not deemed necessary to decide at this time. still there are circumstances in this case which would take it out of the influence of this doctrine, and would cause it to be regarded in equity as a fraud upon the just expectations of the husband.

A conveyance in trust by the wife while in treaty for a marriage. securing it to herself and children, without the approbation of the intended husband, who afterwards marries her—Held to be a fraud upon the marital rights of the husband and void: (7 *Monroe*, 489.`

In the first place the trust is not created exclusively for the support of the child by the prior marriage, but also for the benefit of the mother, and gives her exclusive dominion over part of the property during her life. It was made with a view to deprive the intended husband of the right to, and the control over the property, and in all its essential characteristics bears a striking resemblance to the case in this Court, of *Hobbs* vs *Blandford* (7. *Mon.* 469.) in which a similar writing executed under like circumstances, was held to be a fraud upon the rights of the second husband, and not binding apon him.

In the next place during the pendency of the negotiation between the parties an agreement was entered into by them on the subject of the support of the child, by the prior marriage, which seems to have been reasonable and proper, and which the husband professes his willingness faithfully to comply with. Having entered into such an agreemeut he had a right to believe that it was satisfactory, and that the property of his wife, would, upon their marriage, vest in him, so far as the law would produce that effect, in consequence of their intermarriage. If the deed of trust was subsequently

McAfee
vs
Ferguson, &c.

executed it was in violation of this express agreement; and if it had been previously executed, the agreement had a tendency to deceive him, by inducing the belief that the property of his intended wife was unincumbered, and that no provision had been made for the child.

Any disposition of her property by a woman after a treaty of marriage has commenced, without the approbation of the husband, which is voluntary, is fraudulent: (*Roper on Husband and wife,* 163.)

The general principle is that deception and fraud will be inferred, if after the commencement of the treaty for marriage, the wife should attempt to make any disposition of her property, without her intended husband's knowledge or concurrence, and such dispostion of her property, if merely voluntary, will not be binding upon her subsequent husband.   (*Roper on husband and wife.* 163.)

The present case falls within the operation of the general principle, and the deed of trust should be vacated, unless the husband ratified it, after his marriage or unless the statute of Missouri makes the deed valid against the husband in consequence of its having been recorded.

McAfee having after his marriage, been informed by his wife of the existence of the deed of trust which she had previously executed, wrote a letter to the trustee, stating that when he left Misaouri, through ignorance he had started with a couple of the slaves, but having learned that he had no claim to them, he had left them at St. Louis, where the trustee would find them ; and directing him not to send on the other two, according to the arrangement that had been made ; and also, requesting the trustee to inform him what he intended to do with Sarah Broaddus.

This communication is relied upon as a ratification of the deed of trust.   It is evident from its whole tenor, that such was not its object, but that it was written under the influence of a feeling of dissatisfaction.   The writer did not intend to surrender any right that he had as husband, he supposed he had been deprived of all right to the property, and acted under that impression. He states that he had learned he had no claim to the property, and therefore left it behind.   He does not say that although the deed is not binding upon him, he will submit to its provisions, and recognize its validity ; but

on the contrary states that he is informed that he has no claim to the property, from which it is apparent, that he acted in total ignorance of his rights as husband. We do not therefore regard this letter as amounting to a ratification of the deed of trust.

Nor do we think there is anything in the Missouri statute, concerning fraudulent conveyances, which makes this deed of trust valid, because it was a recorded instrument, before the marriage took place. The statute in our opinion has no application to the case. The second and third sections which have been relied upon refer to conveyances made to defraud creditors and purchasers, and do not embrace a conveyance of slaves merely voluntary. The fourth section of the act provides, that all conveyances of slaves not for a consideration deemed valuable in law, shall be void as against all creditors and purchasers, unless possession shall really accompany the conveyance, or unless the same be by deed in writing duly proved, or acknowledged and recorded. And the sixth section of the same act provides that such conveyance shall not be valid or binding even when recorded except between the parties, if made with intent to defraud prior creditors and purchasers. So that taking the whole act together we do not regard it as having altered the law of the case, or legaliszed the fraud on the right of the husband.

A decree therefore should be rendered vacating and setting aside the deed of trust, upon the condition, however, that the husband will bind himself to fulfil the contract made with his wife before their marriage for the benefit of her daughter Sarah, and to secure its fulfilment, the Court should either retain a lien upon the property, or take such other security as will be sufficient for the purpose.

Wherefore the decree dismissing the complainants bill is reversed, and cause remanded for a decree in conformity with this opinion.

*J. & W. L. Harlan* for plaintiff; *Ballinger* for defendant.